IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                             **Case No. 12-40006-03-RDR**

DENNIS AUGUSTINE,

        Defendant.

## **MEMORANDUM AND ORDER**

Defendant is charged with conspiracy to possess with intent to distribute methamphetamine. This case is before the court upon two motions to suppress. The court conducted a hearing upon the motions on May 7, 2012 and is prepared to rule.

**MOTION TO SUPPRESS STATEMENTS - Doc. No. 43**

Defendant was interrogated in custody by law enforcement officers with the Salina, Kansas police department on November 30, 2011. Defendant received an oral <u>Miranda</u> warning prior to making any incriminating statements. He also signed and initialed a written form which set forth his Fifth and Sixth Amendment rights.

Defendant contends in his motion to suppress that he did not waive his <u>Miranda</u> rights knowingly, intelligently and voluntarily because he was suffering from the absence of certain drugs for which he had a prescription <u>and</u> because he was under the influence of certain other drugs. The government has the burden of proving a valid waiver by a preponderance of the evidence. <u>U.S. v. Burson</u>,

531 F.3d 1254, 1256 (10th Cir. 2008).

Legal standards

The Tenth Circuit reviewed the relevant standards applicable to this issue in U.S. v. Smith, 606 F.3d 1270, 1276 (10th Cir. 2010):

> A waiver of Miranda rights must be made voluntarily, knowingly, and intelligently. See Smith v. Mullin, 379 F.3d 919, 932 (10th Cir. 2004). Our inquiry into a waiver's validity has two dimensions:
>
>> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.
>
> Id. (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). In determining whether rights were voluntarily waived, we consider: the suspect's age, intelligence, and education; whether the suspect was informed of his or her rights; the length and nature of the suspect's detention and interrogation; and the use or threat of physical force against the suspect. See Smith, 379 F.3d at 934; United States v. Minjares-Alvarez, 264 F.3d 980, 985 (10th Cir. 2001).
>
> The same factors are assessed in determining whether a confession was voluntarily given. See Smith, 379 F.3d at 934; Minjares-Alvarez, 264 F.3d at 984-85. In addition, identifying coercive police activity is a necessary predicate to finding that a confession is not voluntary. See Smith, 379 F.3d at 934. Importantly, "[t]he state of intoxication does not automatically render a statement involuntary." United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir. 1993). Rather, the test is

> "whether a [suspect's] will was overborne by the circumstances surrounding the giving of a confession." Dickerson v. United States, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (internal quotation marks omitted).

Findings and conclusions

The court has watched a recording of defendant's interrogation and listened to the testimony of two Salina police officers. With due consideration, the court makes the following findings.

Defendant is approximately 50 years old. He has a prior drug conviction and has served time in prison. So, he has experience with drug investigations and the criminal justice system. He appears to be a man of average intelligence. Prior to his interrogation he received and acknowledged his Miranda rights and agreed to speak with the law enforcement officers. He was told that he could stop speaking at any time. His interview was conducted in the early afternoon at what appeared to be a comfortable setting. Defendant was not restrained. His interrogators do not appear to be armed. They addressed defendant in a conversational manner and did not threaten him with physical force or otherwise. They did explain that he was facing the possibility of a federal indictment and a lengthy sentence. The interview lasted approximately 70 minutes.

The main issue raised in defendant's motion is whether the presence or absence of certain drugs had such an impact upon defendant's mental state that his confession should be considered

3

to be involuntary. Two witnesses to the interrogation, James Norton and Chad McCary, testified that defendant did not appear intoxicated and that his faculties and will were not overborne by the influence of drugs. During the interview, defendant denied that he was under the influence of drugs. Defendant appears sober in the recording of the interview. He seems to understand the questions being asked. Most but not all of the time, he quickly and directly answered the questions posed. The court does not believe the presence of drugs in defendant's system made defendant unaware of the nature of his rights and of the consequences of his decision to speak with the police. Indeed, at times during the interview, it appeared to the court that defendant understandably struggled with the thought of those consequences.

As for the absence of drugs, defendant told the officers during his interrogation that he took three different prescription drugs and that sometimes his anxiety becomes really bad without them. He compared the feelings of anxiety without the medication with those he was feeling during the interview. Defendant mentioned at least four times during the interview that he needed his medication, sometimes suggesting that he was having a hard time thinking without it. This occurred as he was questioned regarding how much methamphetamine he received from his supplier and was asked to identify who bought methamphetamine from defendant. Defendant never lost control of his emotions or failed to maintain

4

cognition.  While defendant may have been more comfortable with his medication, the court cannot conclude that the absence of medication caused defendant to proceed involuntarily or in ignorance of the consequences of his actions and statements. Defendant's posture, eye contact and diction were consistent with someone who was in control of his faculties and his conduct.

In conclusion, after careful consideration the court finds that the government has proven by a preponderance of the evidence that defendant knowingly, intelligently and voluntarily waived his rights.  Therefore, the motion to suppress his statements shall be denied.

**MOTION TO SUPPRESS EVIDENCE RELATED TO SEARCH WARRANT - Doc. No. 44**

Law enforcement officers executed a search warrant at defendant's home at 904 N. 10th St. in Salina, Kansas.  Defendant contends that the search warrant was not supported by probable cause.  "Probable cause" is a "fair probability" that contraband or other evidence will be found in a particular place.  U.S. v. Biglow, 562 F.3d 1272, 1281 (10th Cir. 2009).

Contents of the search warrant affidavit

The following information is taken from the search warrant affidavit.  Lt. James Norton has been a law enforcement officer in Kansas for 24 years and employed by the Salina, Kansas police department for 21 years.  He has training and experience as a drug

task force officer and participated in numerous drug arrests and investigations. Based on that experience and training, Lt. Norton knows that it is common for drug dealers "to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences for ready access and to conceal these records from law enforcement authorities." Ex. 3, p. 3.

A computer check for 904 N. 10th St. in Salina determined that defendant Augustine had active water service at that location at the time of the search warrant. Another check of a different city computer system listed defendant as a resident at that address.

Defendant Augustine was arrested and convicted of possession of methamphetamine with intent to distribute in 1993. The prosecution was supported by methamphetamine found at defendant's residence at that time. He was placed on parole in 1997.

In November 2011, a drug task force was investigating Kevin Ashcraft, Lisandro Clara-Fernandez and others for distributing methamphetamine in the Salina area. A wiretap of Ashcraft's phone indicated that Clara-Fernandez was Ashcraft's source of methamphetamine. On November 13, 2011, a phone used by Clara-Fernandez was traced to Salina, Kansas and Kevin Ashcraft's residence. Surveillance witnessed a Red GMC Sierra pickup truck with a Hispanic male driver at Ashcraft's house. The driver entered the house. The Hispanic male then left Ashcraft's house in his vehicle and was followed to 904 N. 10th St. - defendant

Augustine's address. He left and then returned shortly thereafter before leaving again. He did not enter the residence. The vehicle was stopped later by law enforcement officers and the driver was identified as Lisandro Clara-Fernandez.

On November 23, 2011, Clara-Fernandez's vehicle was again seen in the back yard at defendant Augustine's address. Clara-Fernandez's phone was also traced to the address at the same time. Surveillance witnessed a Hispanic male and a white male meet near the driver's door of the vehicle. Defendant Augustine is a white male.

On November 27, 2011, drug task force officers had information that Clara-Fernandez and Ashcraft were meeting at a rest stop on I-70 for a drug transfer. Their meeting was observed and it appeared that Ashcraft took a package from Clara-Fernandez's vehicle and placed the package in Ashcraft's van. Later, Ashcraft was stopped on I-70 and a search of the van discovered 3.12 pounds of methamphetamine bundled in two packages.

Ashcraft was arrested, waived his Miranda rights and spoke to law enforcement. He admitted that Clara-Fernandez supplied him with methamphetamine - 12 pounds over the past 12 months. He also stated that he received methamphetamine from Clara-Fernandez on November 13, 2011, November 23, 2011 and November 27, 2011.

Ashcraft stated that: Clara-Fernandez also supplied drugs to "Dennis Augustine on North Tenth Street"; the same person (Jason

Hudson) introduced Clara-Fernandez to Ashcraft and Augustine; and that the only reason for Clara-Fernandez to stop at Augustine's house was to deliver drugs.

Application of the good faith exception to the exclusionary rule

The court shall decide this motion on the basis of the good faith exception to the exclusionary rule. Even if a search warrant is not supported by probable cause, the evidence seized pursuant to the warrant need not be suppressed if the executing officers acted with an objective good faith belief that the warrant was properly issued by a neutral magistrate. U.S. v. Campbell, 603 F.3d 1218, 1225 (10th Cir.) cert. denied, 131 S.Ct. 351 (2010). The relevant principles for considering defendant's challenge to the search in this case are set forth in Campbell and are restated here without interior citations and quotations:

> [It is generally presumed that] officers executed a search warrant in objective good faith. This presumption, however, does not apply when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Officers' reliance upon an affidavit is only entirely unreasonable when the affidavit is devoid of factual support. . . . An affidavit is not devoid of factual support if it establishes a minimally sufficient nexus between the illegal activity and the place to be searched. This minimal nexus requirement does not require that hard evidence or personal knowledge of illegal activity link a Defendant's suspected unlawful activity to his home. On the contrary, an affidavit establishes a sufficient nexus when it describes circumstances which would warrant a person of reasonable caution in the belief that the

8

> articles sought are at a particular place. Factors relevant to our nexus analysis include but are not limited to (1) the type of crime at issue, (2) the extent of a suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence. Furthermore, magistrates may permissibly rely on law enforcement officers' opinions regarding where contraband or evidence may be kept. And, as we have said before, it is merely common sense that a drug supplier will keep evidence of his crimes at his home.

Id. at 1230-31.

In this case, the search warrant affidavit states that Dennis Augustine on North Tenth Street received drugs from Clara-Fernandez. This information for the search warrant came from a known informant (Kevin Ashcraft) who was observed by police officers while he was giving the information and who could be held responsible if his allegations turned out to be untrue. This is one factor which strengthens the basis for the conclusions within the affidavit. See Florida v. J.L., 529 U.S. 266, 270 (2000) (known informants can have their reputations assessed and be held accountable if their allegations are fabricated); U.S. v. Brown, 496 F.3d 1070, 1074-75 (10th Cir. 2007) ("'where informants are known . . . a lesser degree of corroboration is required'") (quoting U.S. v. Elmore, 482 F.3d 172, 180 (2d Cir. 2007)). It appears that the informant admitted his involvement in drug transactions beyond what the police already knew. This also buttresses the reliability of the informant. See U.S. v. Allen, 297 F.3d 790, 794 (8th Cir. 2002) (statements against penal interest

support credibility). Furthermore, some of the relevant details provided by the informant were corroborated by the police. The police confirmed that Clara-Fernandez supplied methamphetamine to the informant and that Clara-Fernandez had been in Salina on November 13 and November 23, 2011 when the informant said he received methamphetamine from Clara-Fernandez. Officers observed Clara-Fernandez or his vehicle at Augustine's residence on those dates as well. The police also corroborated the informant's statement that defendant Augustine lived on North 10th Street. Finally, the affidavit states that in the experience of a veteran law enforcement officer, persons involved in the drug trade secrete contraband and evidence of drug transactions in their homes, and the Tenth Circuit has noted that this observation makes common sense.

Without addressing whether the search warrant for defendant's residence was supported by probable cause, we conclude that the affidavit was not devoid of factual support for the issuance of a search warrant, that the affidavit establishes a minimally sufficient nexus between illegal activity and the place to be searched, and that officers acted in good faith in reliance upon the warrant. Therefore, the court shall deny defendant's motion to suppress the evidence obtained from the execution of the warrant at defendant's residence.

**SUMMARY**

To summarize, for the above-stated reasons, defendant's motion to suppress statements (Doc. No. 43) and defendant's motion to suppress evidence obtained from the search of defendant's residence (Doc. No. 44) shall be denied.

**IT IS SO ORDERED.**

Dated this 10th day of May, 2012 at Topeka, Kansas.

                                        s/Richard D. Rogers
                                        United States District Judge